FILED
United States Court of Appeals
Tenth Circuit

**May 8, 2012**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS
TENTH CIRCUIT**
_____

KAIRI ABHA SHEPHERD, a/k/a Kara
Shepherd, a/k/a Kairi A. Shepherd,

       Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

       Respondent.

No. 11-9520
(Petition for Review)

_____

**ON PETITION FOR REVIEW FROM AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS**
_____

Alan L. Smith, Salt Lake City, Utah, for Petitioner.

Jesse M. Bless, Trial Attorney, (David V. Bernal, Assistant Director, with him on the
brief), Office of Immigration Litigation, Civil Division, U.S. Department of Justice,
Washington, D.C., for Respondent.

_____

Before **HARTZ**, **O'BRIEN**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.

_____

This case is about the government's repeated efforts to remove Kairi Abha

Shepherd from the United States on the ground she is a criminal alien. In the initial

removal proceeding, the government did not effectively contest Ms. Shepherd's claim to

automatic citizenship under the Child Citizenship Act of 2000 (CCA), 8 U.S.C. § 1431, and the Immigration Judge (IJ) dismissed for lack of jurisdiction.

The very next day, the government initiated a new removal proceeding, explaining to the same IJ that it had made a mistake and now realized that Ms. Shepherd was too old to qualify under the CCA for citizenship. The IJ eventually decided that his initial ruling precluded the government from relitigating Ms. Shepherd's citizenship or alienage status, and he terminated the proceeding. The government successfully appealed to the Board of Immigration Appeals (BIA), which held that collateral estoppel did not apply and remanded to the IJ, who ordered removal.

Ms. Shepherd then petitioned this court for review. Her petition requires us to decide whether we have jurisdiction under 8 U.S.C. § 1252(a)(2)(C), which limits judicial review of orders to remove criminal aliens. We therefore must ascertain as a jurisdictional fact whether Ms. Shepherd is a citizen or an alien, using the procedures that Congress prescribed in 8 U.S.C. § 1252(b)(5) for that purpose. We find that her alien status precludes our jurisdiction. Her issue preclusion argument based on the IJ's first decision is unavailing because administrative collateral estoppel does not apply to our § 1252(b)(5) analysis. Accordingly, we dismiss her petition for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Shepherd was an orphaned baby in India when she was brought to this country for adoption in 1982 by a U.S. citizen. Her adoptive mother died when she was eight years of age, and she was thereafter cared for by guardians. There is no record of any effort by Ms. Shepherd or her guardians to petition for her citizenship.

In March and May 2004, Ms. Shepherd was convicted in Utah of attempted forgery and third-degree forgery. After she served her time, the government initiated removal proceedings against her, alleging she was a criminal alien subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) based on the convictions.

At an initial hearing before the Immigration Judge (IJ), government counsel noted that Ms. Shepherd's history suggested she might be able to prove she became a U.S. citizen through adoption under the CCA's automatic citizenship provision, 8 U.S.C. § 1431. This provision directs that "[a] child born outside of the United States automatically becomes a citizen of the United States" when three conditions are fulfilled: "(1) At least one parent of the child is a citizen of the United States"; "(2) The child is under the age of eighteen years"; and "(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." *Id.* § 1431(a); *see also id.* § 1431(b) (clarifying that an adopted child may qualify for automatic citizenship).

Citizenship constitutes the "'denial of an essential jurisdictional fact' in a deportation proceeding." *Duarte-Ceri v. Holder*, 630 F.3d 83, 87 (2d Cir. 2010) (quoting *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922)); *see* also *Omolo v. Gonzales*, 452 F.3d 404, 407 (5th Cir. 2006) ("Only aliens are removable under the Immigration and Nationality Act."). Accordingly, the IJ continued the hearing so that Ms. Shepherd could

retain counsel and attempt to muster the necessary proof to secure dismissal of the removal proceeding.[1]

At the ensuing hearing, Ms. Shepherd offered what everyone involved deemed sufficient documentation to establish citizenship under § 1431: an immigrant visa showing she had arrived in the U.S. as a legal permanent resident, and a certified copy of her subsequent adoption decree. Based on these documents, the IJ dismissed the case without prejudice for lack of jurisdiction, because "the Government is unable to . . . prove the respondent's not a citizen of the United States." Admin. R. at 276. The parties waived appeal. *Id.* at 506.

The next day, however, the government initiated a second removal proceeding based on the same grounds as the first. The government explained that it had overlooked an important fact at the prior hearing: the automatic citizenship provision of the CCA did not apply to Ms. Shepherd because she was no longer a child "under the age of eighteen years" on February 27, 2001, the effective date of the CCA.[2] *See Gomez-Diaz v. Ashcroft*, 324 F.3d 913, 915-16 (7th Cir. 2003) (collecting cases holding CCA did not retroactively afford citizenship to children who did not satisfy its conditions on its effective date). The IJ noted that the government's initiation of the second removal

---

[1]Although the government bore the burden of proving that Ms. Shepherd was not a U.S. citizen, *Mozdzen v. Holder*, 622 F.3d 680, 683 (7th Cir. 2010); *Duvall v. Att'y Gen.*, 436 F.3d 382, 388 (3d Cir. 2006), her foreign birth raised a presumption of alienage that she had to rebut, *Leal Santos v. Mukasey*, 516 F.3d 1, 4 (1st Cir. 2008); *Murphy v. INS*, 54 F.3d 605, 608 (9th Cir. 1995).

[2]Various documents indicated that Ms. Shepherd was born in April 1982.

proceeding raised issues of administrative preclusion and ordered the parties to brief the matter.

After another hearing, the IJ held that the second removal proceeding was not barred by administrative res judicata because the first proceeding had been dismissed without prejudice. The IJ went on to rule, however, that the government was collaterally estopped from relitigating the jurisdictional fact of alienage/citizenship that had been found in Ms. Shepherd's favor in the first proceeding. Thus, lacking jurisdiction to proceed against Ms. Shepherd, the IJ terminated the second removal proceeding.

The government appealed to the BIA, which reversed the IJ's collateral estoppel ruling. The BIA held that collateral estoppel did not apply because "the record does not demonstrate that the issue of [Ms. Shepherd's] citizenship was actually litigated or clearly adjudicated" in the first proceeding. Admin. R. at 5. The BIA remanded for further proceedings and the entry of a new decision. On remand, the IJ ordered Ms. Shepherd removed. She then filed the instant petition for review directly from the IJ's removal order, challenging the BIA's prior rejection of collateral estoppel on the issue of her citizenship.

## II. JURISDICTION OVER THE PETITION FOR REVIEW

This appeal raises a host of jurisdictional issues. We first address whether Ms. Shepherd has met the requirements of finality and exhaustion in the underlying administrative proceedings to qualify for review in this court. We next consider whether the passage of time overcomes the premature filing of her petition to this court. Finally,

we analyze whether 8 U.S.C. § 1252(a)(2)(C), which generally bars appeals of removal orders by criminal aliens, constitutes a jurisdictional bar to Ms. Shepherd's petition.

## A. *Finality and Exhaustion*

The unusual route Ms. Shepherd took to reach this court, bypassing (a second) appeal to the BIA, implicates two basic jurisdictional prerequisites for a petition for review:  the "final order of removal" required by 8 U.S.C. § 1252(a)(1), and the "exhaust[ion] [of] all administrative remedies available to the alien as of right" required by § 1252(d)(1).

The finality concern, implicated by her direct resort to the court of appeals following the IJ's decision, is not a problem.[3]  An appeal to the BIA is not necessary to make a removal order final for purposes of judicial review.  Such an order becomes final *either* through appeal to and affirmance by the BIA, *id.* § 1101(a)(47)(B)(i), or through "expiration of the period in which the alien is permitted to seek review" by the BIA, *id.* § 1101(a)(B)(ii).  Thus, bypassing the BIA and directly seeking judicial review of an IJ's removal order does not violate the jurisdictional condition of finality because the period to seek BIA review has expired.

The exhaustion issue is more complicated.  Generally, "[n]eglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review."  *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007) (internal

---

[3]In the next section of this opinion, we address a more specific finality complication here, arising strictly from the *timing* of her petition for review.

quotation marks omitted). We must address whether bypassing an available final appeal to the BIA constitutes a failure to exhaust when the issue for which the alien later seeks judicial review was already resolved by the BIA in an earlier appeal in the same case.

The relevant statutory language includes only one qualification to the exhaustion requirement: the remedy to be exhausted must be "*available* to the alien *as of right*." 8 U.S.C. § 1252(d)(1) (emphasis added). Ms. Shepherd had a right of appeal to the BIA after the IJ's removal order, and we know of no statute or regulation limiting this right of appeal so as to exclude matters, such as the collateral estoppel ruling at issue here, that had been resolved by the BIA on an interlocutory or interim appeal in the same case. Although Ms. Shepherd may have had little expectation of success in a second appeal to the BIA on the collateral estoppel issue, we cannot assume that review through a second appeal was unavailable to her as a matter of right.

There is, however, another consideration based upon the concept of exhaustion itself. Exhaustion is generally understood to require *one* complete presentation of an issue. *See generally Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Courts have repeatedly adhered to this general principle in applying § 1252(d), holding that exhaustion is satisfied once the BIA decides a matter. Motions to reopen or reconsider that merely reargue issues already decided are not required. *See, e.g.*, *Dale v. Holder*, 610 F.3d 294, 301 (5th Cir. 2010); *Parlak v. Holder*, 578 F.3d 457, 463 (6th Cir. 2009); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 880-81 (9th Cir. 2003); *Gebremichael v. INS*, 10 F.3d 28, 33 n.13 (1st Cir. 1993). In

short, "[f]ederal jurisdiction is not conditioned upon the petitioner affording the BIA a second bite at the apple." *Dale*, 610 F.3d at 301.

At least two circuits have invoked this principle to hold that a second appeal to the BIA is not required for exhaustion under circumstances like those presented here. The Third Circuit explained that such a redundant appeal would not serve the purposes of exhaustion because

> [t]he issues have [already] been fairly presented to, and fully adjudicated by, the BIA. . . . Judicial economy would not be served by requiring [the alien] to take a second, essentially frivolous appeal to the BIA raising the same issues that the Board had already rejected in [the alien's] own case. Nor would the congressional purpose of preventing unjustified delay in removal cases, be advanced by interposing a second and wholly repetitive appeal to the BIA.

*Popal v. Gonzales*, 416 F.3d 249, 253 (3d Cir. 2005) (citation omitted); *see also Fei Mei Cheng v. Att'y Gen.*, 623 F.3d 175, 185 n.5 (3d Cir. 2010) (following *Popal* to hold alien was not "required to reargue the [asylum] issue before the Board after the IJ's second decision [ordering removal], given that the Board already had the opportunity to address the issue" on government's interim appeal from IJ's initial grant of asylum). The Sixth Circuit similarly held that

> petitioners were not required to present their asylum claims to the Board a second time [following the IJ's entry of a removal order]. A second administrative appeal on the asylum issues would have been the functional equivalent of a motion for the Board to reconsider its first order [reversing the IJ's initial grant of asylum]. Such motions, as a general rule, need not be filed to exhaust administrative remedies.

*Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citations omitted).[4]

---

[4]*Perkovic* predates passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), so it addresses 8 U.S.C. § 1105a(c) rather than § 1252(d)(1), but the latter just "reenacted the key

- 8 -

Consistent with the general principle that exhaustion does not require repeated presentations of issues already finally resolved, as well as the specific case law from the Third and Sixth Circuits disavowing the need for redundant appeals to the BIA, we hold that Ms. Shepherd was not required to take a second appeal to the BIA following the IJ's removal order issued on remand. The BIA's determination on the prior appeal that the government was not collaterally estopped from denying her status as a U.S. citizen sufficed to exhaust that issue.

In sum, Ms. Shepherd's petition meets the finality requirement by virtue of passage of time and meets the exhaustion requirement because a second appeal to the BIA would essentially be a motion for reconsideration of an issue the BIA already had decided.

**B.** *Premature Petition for Review and Applicability of Ripening Principle*

The IJ issued the order of removal on February 22, 2010. Without an appeal to the BIA, that order became final for purposes of judicial review on March 25, 2010. *See* 8 U.S.C. § 1101(a)(47)(B)(ii). Ms. Shepherd, however, filed her petition for review with this court on March 9, 2010, before the order of removal became final. This chronology raises the question of whether premature petition for review from an administrative order, in particular an IJ's removal order still subject to appeal to the BIA, can support our jurisdiction when the order later becomes final through expiration of the time to appeal to the BIA.

language" of the former, *Etchu-Njang v. Gonzales*, 403 F.3d 577, 582 (8th Cir. 2005), i.e., the requirement that the alien "exhaust[] all administrative remedies available to [him] as of right."

For some time this circuit has held that, under appropriate circumstances, a premature notice of appeal—filed from an order that finally resolves a matter but which must await additional judicial action before becoming final for purposes of appeal—"ripens" into an effective notice of appeal when the necessary action is taken. *See Constien v. United States*, 628 F.3d 1207, 1210 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2884 (2011); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1111 (10th Cir. 2007); *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988) (en banc).

We adopted this rule to avoid creating "a trap for unwary attorneys" and litigants who, having filed the necessary notice of appeal, only too early, would not realize a second notice of appeal was required. *See Lewis*, 850 F.2d at 645. A similar approach is appropriate for petitioners, such as Ms. Shepherd, who face removal from the only country they have known. Indeed, the statutory language is more favorable to a ripening rule in this administrative context than it was in the judicial context addressed in *Lewis*. Unlike the language of 28 U.S.C. § 2107, which specifies a *filing period* that a premature notice of appeal clearly does not satisfy ("within thirty days after the entry of such judgment"), the language of § 1252(b)(1) specifies a *filing deadline* that a premature petition for review arguably does satisfy ("not later than 30 days after the date of the final order of removal"). Our holding is narrow: a petition for review filed from an IJ's removal order *that is not appealed to and reviewed by the BIA* ripens to permit judicial

- 10 -

review when the removal order becomes final upon the expiration of the time for appeal to the BIA. Ms. Shepherd's petition, though filed prematurely, is ripe for our review.[5]

## C. *Subject Matter Jurisdiction: 8 U.S.C. § 1252(a)(2)(C), (D) and § 1252(b)(5)*

In 8 U.S.C. § 1252(a)(2)(C), Congress directed that, "[n]otwithstanding any other provision of law . . . , including [the habeas and mandamus statutes], and except as provided in [8 U.S.C. § 1252(a)(2)(D)], no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [8 U.S.C. §] 1227(a)(2)(A)." But this directive is not as preclusive as it may appear. First, the exception in § 1252(a)(2)(D) allows review of "constitutional claims or questions of law" arising in removal proceedings. Second, we have jurisdiction to determine jurisdictional facts. We conclude that this second principle allows us to reach the issue of Ms. Shepherd's citizenship. By reaching that issue, we follow the procedures outlined in 8 U.S.C. § 1252(b)(5), which gives us plenary authority to decide claims of citizenship.[6]

---

[5]We need not and therefore do not decide whether ripening would be appropriate in cases where the BIA reviews a removal order after the premature petition for review is filed. Interposing BIA review may undercut the case for ripening, particularly if something other than a summary affirmance or dismissal ensues, because the BIA's substantive decision would then supplant the IJ's decision as the object of our review. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (explaining that IJ's order is agency decision on judicial review if BIA affirms without opinion, but if BIA panel issues full opinion "the BIA opinion completely supercedes the IJ opinion for purposes of judicial review" (internal quotation marks omitted)).

[6]Because nationality includes citizenship, 8 U.S.C. § 1101(a)(22); *see also id.* § 1101(a)(3) ("alien" and "citizen or national of the United States" are mutually exclusive categories), the statutory reference to nationality claims is understood to include

- 11 -

**1.** *Review under § 1252(a)(2)(D) Exception*

The § 1252(a)(2)(D) exception to the § 1252(a)(2)(C) jurisdictional bar does not apply to our case under Tenth Circuit precedent. The § 1252(a)(2)(D) exception allows review of "constitutional claims or questions of law" arising in removal proceedings. Whether the conditions for collateral estoppel have been met is generally considered to be an issue of law. *See Szehinskyj v. Att'y Gen.*, 432 F.3d 253, 255 (3d Cir. 2005); *Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1341 (11th Cir. 2004); *see also United States v. Gallardo-Mendez*, 150 F.3d 1240, 1242 (10th Cir. 1999).

This court has relied on the relevant legislative history in holding that the phrase "questions of law" in § 1252(a)(2)(D) does not refer to all legal issues, but only to "issues regarding statutory construction." *Diallo v. Gonzales*, 447 F.3d 1274, 1281-82 (10th Cir. 2006) (internal quotation marks omitted); *see also Alzainati v. Holder,* 568 F.3d 844, 850 (10th Cir. 2009)*; Lorenzo v. Mukasey,* 508 F.3d 1278, 1282 (10th Cir. 2007)*; Kechkar v. Gonzales,* 500 F.3d 1080, 1083-84 (10th Cir. 2007)*; Torres De La Cruz*, 483 F.3d at 1019 n.5. Collateral estoppel is a product of decisional law, not a statutory directive. The BIA's ruling on administrative collateral estoppel in this case did not involve construction or interpretation of a statute. Thus, under our circuit's restrictive view of

citizenship claims. *See, e.g.*, *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 393 (5th Cir. 2006); *Chau v. INS*, 247 F.3d 1026, 1028 (9th Cir. 2001).

§ 1252(a)(2)(D), the petition for review challenging that ruling does not satisfy this exception to the § 1252(a)(2)(C) jurisdictional bar.[7]

## 2. *Review through the principle of jurisdictional self-determination*

Before § 1252(a)(2)(D) was enacted as part of the REAL ID Act of 2005, Pub. L. No. 109-13, 118 Stat. 231, this court (and others) recognized that, to determine our own jurisdiction over a petition for review falling within the § 1252(a)(2)(C) bar, we retain jurisdiction to review the jurisdictional facts upon which the bar is predicated. *Tapia Garcia v. INS*, 237 F.3d 1216, 1220 (10th Cir. 2001).

> The [statute)] divests courts of jurisdiction only if an alien '*is* removable by reason of having committed a criminal offense.' 8 U.S.C. § 1252(a)(2)(C) (emphasis added). It does not say that courts lack jurisdiction if the … alien is *found* deportable for commission of certain criminal offenses [by the IJ/BIA]. Thus, the statutory language clearly requires that we determine whether [the triggering statutory] conditions exist before dismissing the appeal.

*Id.* at 1220. We therefore have jurisdiction to "decide whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute." *Id.*

This principle of jurisdictional self-determination of the three triggering conditions of the § 1252(a)(2)(C) bar is not restricted, as § 1252(a)(2)(D) is, to "constitutional claims or questions of law." Indeed, *Tapia Garcia* specifically refers to our "review of jurisdictional *facts*" relating to the statutory bar. 237 F.3d at 1220 (emphasis added).

---

[7]Some circuits take a broader view of the § 1252(a)(2)(D) exception and include collateral estoppel within its scope. *See Ali v. Mukasey*, 529 F.3d 478, 488-89 (2d Cir. 2008); *see also Johnson v. Whitehead*, 647 F.3d 120, 129-31 (4th Cir. 2011) (reviewing collateral estoppel ruling in criminal-alien-removal action subject to § 1252(a)(2)(C) bar, though not explicitly invoking § 1252(a)(2)(D)), *cert. denied*, 132 S. Ct. 1005 (2012); *Duvall v. Att'y Gen.*, 436 F.3d 382, 386 (3d Cir. 2006) (same).

*Tapia Garcia* rests on the well-settled principle that "a federal court *always* has jurisdiction to determine its own jurisdiction," *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (emphasis added). Accordingly, the later enactment of the § 1252(a)(2)(D) constitutional-claim/legal-issue exception to the § 1252(a)(2)(C) jurisdictional bar does not restrict our authority to determine a jurisdictional fact that in turn determines whether the § 1252(a)(2)(C) bar applies. Put another way, Congress may limit federal court jurisdiction through provisions such as the § 1252(a)(2)(C) bar, but courts have authority to determine whether the factual conditions for the bar are present. Because this determination precedes application of the bar, the potential availability of some other, statutory exception, such as § 1252(a)(2)(D), which only comes into play once the bar is found to apply, does not preclude exercising our *Tapia Garcia* authority to determine a relevant jurisdictional fact.

Our circuit precedent confirms the point. Following enactment of § 1252(a)(2)(D), this court has repeatedly recognized that *Tapia Garcia*'s principle of jurisdictional self-determination remains a distinct basis for our review of the factual bases for application of § 1252(a)(2)(C), independent of § 1252(a)(2)(D). *See Torres de la Cruz*, 483 F.3d at 1018-19 (noting § 1252(a)(2)(C) bar is now "subject to two exceptions," the existing jurisdictional self-determination principle from *Tapia Garcia* and the new statutory exception for constitutional and legal issues in § 1252(a)(2)(D)); *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1156 (10th Cir. 2006) (same), *adhered to in relevant part on reh'g en banc*, 482 F.3d 1202 (2007).

- 14 -

Accordingly, we have jurisdiction under the *Tapia Garcia* principle to review whether the factual conditions exist for application of the jurisdictional bar in § 1252(a)(2)(C). Here, that includes the "jurisdictional fact[]" of "whether the petitioner is . . . an alien." *Tapia Garcia,* 237 F.3d at 1220.

### 3. *De novo determination under § 1252(b)(5)*

Whether Ms. Shepherd is an alien is therefore a jurisdictional fact. If she is an alien, we have no jurisdiction under § 1252(a)(2)(C). In § 1252(b)(5), Congress "explicitly place[d] the determination of nationality claims solely in the hands of the courts of appeals and (if there are questions of fact to resolve) the district courts." *Hughes v. Ashcroft*, 255 F.3d 752, 758 (9th Cir. 2001); *see also Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004) (noting § 1252(b)(5) "explicitly places the determination of nationality claims in the hands of the court"). Specifically, the statute provides:

> Treatment of nationality claims
>
> (A) Court determination if no issue of fact
>
>> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
>
> (B) Transfer if issue of fact
>
>> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court … for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28 [i.e., the Declaratory Judgment Act].

- 15 -

(C) Limitation on determination

> The petitioner may have such nationality claim decided only as provided in this paragraph.

This provision requires that the federal courts make a plenary determination of the issue. The reason for this is an historical accommodation of constitutional concerns. "In carving out nationality claims for this kind of treatment, 'Congress was aware of past Supreme Court decisions holding that the Constitution requires that there be some provision for *de novo* judicial determination of claims to American citizenship in deportation proceedings'" *Fernandez v. Keisler*, 502 F.3d 337, 345 (4th Cir. 2007) (quoting *Agosto v. INS*, 436 U.S. 748, 753 (1978)) (brackets omitted); *see Agosto*, 436 U.S. at 753-54 (noting "Congress intended [§ 1252(b)(5)'s predecessor] to satisfy any constitutional requirements relating to de novo judicial determination of citizenship claims").

Congress directed the courts to decide citizenship claims, not review or reconsider agency determinations. If the circuit court of appeals finds that the material facts are undisputed, it "*shall decide* the nationality claim." 8 U.S.C. § 1252(b)(5)(A) (emphasis added). If material facts are in dispute, the matter is transferred to the district court "for a *new hearing* on the nationality claim." *Id.* § 1252(b)(5)(B) (emphasis added); *see also id.* § 1252(b)(4) (specifying standard for judicial review of BIA decision, particularly the deferential review of fact findings, but clarifying that it applies "*[e]xcept* as provided in . . . [§ 1252(b)](5)(B)" (emphasis added)).

In short, although alienage is a prerequisite for removal and may certainly be addressed at the administrative level, *Theagene v. Gonzales*, 411 F.3d 1107, 1110-11 n.4 (9th Cir. 2005), once the issue of citizenship is put before the courts, "the BIA's decision is no longer relevant." *Lopez v. Holder*, 563 F.3d 107, 110 (5th Cir. 2009).

We note a complication in the criminal-alien context arising from the interplay between § 1252(b)(5) and § 1252(a)(2)(C). This court has stated that § 1252(b)(5) "is not excepted from the jurisdiction-stripping mandate of § 1252(a)(2)(C). Therefore, [when the petitioner] is being removed for commission of an aggravated felony, we can review his claim [of nationality] under § 1252(b)(5) only with respect to constitutional claims or questions of law [i.e., issues involving statutory interpretation]." *Abiodun v. Gonzales*, 461 F.3d 1210, 1215 (10th Cir. 2006); *see Brue v. Gonzales*, 464 F.3d 1227, 1231-32 (10th Cir. 2006) (following *Abiodun*). In cases not involving constitutional claims or issues of statutory interpretation, the bar in § 1252(a)(2)(C) and (D) would preclude resort to § 1252(b)(5) for the judicial determination of citizenship.

But the panel decisions in *Abiodun* and *Brue* could not (and did not purport to) overrule the line of cases discussed earlier, from *Tapia Garcia* and *Ballesteros* (which preceded *Abiodun*) to *Torres de la Cruz*, recognizing that the principle of jurisdictional self-determination already affords the court jurisdiction to decide citizenship issues as one of the conditions for the bar in § 1252(a)(2)(C). This determination necessarily precedes application of the bar and the limited exception it makes for constitutional and legal issues through § 1252(a)(2)(D).

Thus, under the *Tapia Garcia* principle, the issue of citizenship falls within our jurisdiction to determine jurisdictional facts.  To make this determination, Congress directed use of the procedures specified in § 1252(b)(5)(A) and (B) for de novo judicial resolution of both legal and factual disputes.[8]  *See* 8 U.S.C. § 1252(b)(5)(C) ("The petitioner may have such nationality claim decided *only as provided in this paragraph*." (emphasis added)).  Of course, if the issue is ultimately decided against petitioner, the appropriate disposition of the petition for review is dismissal for lack of jurisdiction under § 1252(a)(2)(C).  *See Tapia Garcia*, 237 F.3d at 1223; *Khalayleh v. INS*, 287 F.3d 978, 979 (10th Cir. 2002) (following *Tapia Garcia*).

In sum, we have jurisdiction to determine the jurisdictional fact of whether Ms. Shepherd is a citizen or an alien, and we must follow the procedures outlined in § 1252(b)(5) to do so.

**D.  *Summary of Jurisdictional Analysis***

We summarize our jurisdictional analysis as follows.  First, our jurisdiction is not foreclosed by either timeliness or exhaustion concerns.  Second, notwithstanding the bar in § 1252(a)(2)(C), our subject matter jurisdiction—insofar as the threshold issue of alienage/citizenship is concerned—is secured by the jurisdictional self-determination principle recognized in *Tapia Garcia*.  We need not and cannot rely on § 1252(a)(2)(D),

---

[8]Other circuits do not subordinate plenary jurisdiction under § 1252(b)(5) to the limits on judicial review in § 1252(a)(2)(C) and (D), and for them the jurisdictional analysis is more straightforward.  They need only invoke jurisdiction directly under § 1252(b)(5) and then follow the congressionally mandated procedures for determining citizenship as in any other context.  *See, e.g.*, *Alwan v. Ashcroft*, 388 F.3d 507, 510 n.1 (5th Cir. 2004); *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1064 (9th Cir. 2003); *Batista v. Ashcroft*, 270 F.3d 8, 12 (1st Cir. 2001).

with its restriction to legal issues of statutory construction and constitutional claims, for our review. Finally, because the *Tapia Garcia* principle is an independent exception to the bar in § 1252(a)(2)(C), operating before the bar can even be applied, we proceed to determine the jurisdictional fact of alienage/citizenship according to the exclusive procedures in § 1252(b)(5).

### III. THE JURISDICTIONAL FACT OF ALIENAGE/CITIZENSHIP

We now turn to the determination of Ms. Shepherd's alienage or citizenship to decide whether we have jurisdiction under § 1252(a)(2)(C). We apply the § 1252(b)(5) procedures to determine citizenship.

**A.  *Review under § 1252(b)(5)(A)***

The issue of citizenship is for the court of appeals to decide when "the pleadings and affidavits [show] that no genuine issue of material fact . . . is presented." 8 U.S.C. § 1252(b)(5)(A); *see also id.* § 1252(b)(5)(B) (directing transfer to district court for hearing upon court of appeals' finding that "a genuine issue of material fact about the petitioner's nationality is presented"). Nothing in the administrative record suggests a dispute about the facts material to Ms. Shepherd's citizenship. Under those facts, she was too old to qualify when the Child Citizenship Act became effective. Unless additional evidence can create a dispute in that regard, taking the case out of the reach of § 1252(b)(5)(A) and requiring a transfer to the district court for a factual hearing under § 1252(b)(5)(B), we have no choice but to hold that Ms. Shepherd is an alien and dismiss her petition for review.

**B.  *Review under § 1252(b)(5)(B)***

Ms. Shepherd argues that she be afforded a hearing in the district court under § 1252(b)(5)(B) to bolster her citizenship claim. To support such a request, however, she must show "from the pleadings and affidavits" a genuine issue of material fact warranting development and disposition at an evidentiary hearing. Whether a genuine issue of material fact exists for purposes of § 1252(b)(5) is resolved under "the same principles employed on a Rule 56 motion for summary judgment." *Duarte-Ceri*, 630 F.3d at 91 (following Supreme Court's holding as to § 1252(b)(5)'s predecessor in *Agosto*, 436 U.S. at 754); *see Ayala-Villanueva v. Holder*, 572 F.3d 736, 738 (9th Cir. 2009) ("Traditional summary judgment rules guide our decision concerning transfer [under § 1252(b)(5)(B)]."). A party opposing summary judgment may submit evidence to establish genuine issues of material fact requiring trial. And proceedings under § 1252(b)(5)(B) are expressly excepted from the provision limiting judicial review to the agency record. *See* 8 U.S.C. § 1252(b)(4)(A). Thus, the reference to "pleadings and affidavits" in § 1252(b)(5) is properly understood to include additional evidence presented on judicial review, *Batista v. Ashcroft*, 270 F.3d 8, 13-14 (1st Cir. 2001), and the lack of a factual dispute evident from the administrative record alone is not necessarily dispositive.

On the other hand, the petitioner must proffer probative evidence to forestall the summary disposition of the citizenship issue on the existing record, and Ms. Shepherd has failed to do that. When pressed on this point at oral argument, her counsel could only speculate that Ms. Shepherd might be able to uncover evidence in India indicating a later birth date, thereby enabling her to fall within the window of applicability for the CCA.

Multiple records specify her birth date as April 1, 1982, *see* Admin. R. at 515, 786-87, 788, 790. Even more conclusive, her adoption decree (noting her presence in the courtroom that day) was issued by the Salt Lake County District Court on December 2, 1982, *see id.* at 513—*still more than 18 years prior to the effective date of the CCA*. It is effectively impossible for Ms. Shepherd to produce probative evidence establishing a birth date late enough (after January 1983) for her to have secured citizenship through operation of the CCA.

Ms. Shepherd has not suggested any other factual basis for demonstrating her citizenship. And she cannot plead surprise. She has been on notice of the deficiency of her claim under the CCA ever since the initiation of the second removal proceeding before the IJ, and the point only became more crucial with the BIA's rejection of her collateral estoppel argument. Analogizing to the standards governing requests for additional discovery to forestall imminent summary judgment, *see generally Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179-80 (10th Cir. 2008); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000), Ms. Shepherd has not advanced or supported any ground to justify postponement of our disposition of this case.

We must conclude that a transfer to the district court for an evidentiary hearing under § 1252(b)(5)(B) is not warranted. The existing record provides a fully sufficient basis for us to rule as a matter of law that Ms. Shepherd is an alien who may properly be removed from this country for commission of an aggravated felony.

## C. *Administrative Collateral Estoppel*

Ms. Shepherd argues that the IJ's favorable determination of her citizenship issue in the initial removal proceeding should have collateral estoppel effect, precluding a finding that she is an alien. Although, as explained earlier, we lack jurisdiction under § 1252(a)(2)(C) and (D) to review whether the agency should have applied collateral estoppel in Ms. Shepherd's second removal proceedings, here we consider whether collateral estoppel could constrain our own independent determination of citizenship under *Tapia Garcia* and § 1252(b)(5). Several reasons convince us that, regardless of whether administrative preclusion principles should have operated at the agency level, they have no role to play in our jurisdictional fact decision.

First, whether Ms. Shepherd is an alien determines our own jurisdiction to review her petition. As such, it "is categorically not a matter of agency judgment." *United States v. Fields*, 516 F.3d 923, 934 (10th Cir. 2008). "Determining federal court jurisdiction is *exclusively* the province of the federal courts *regardless of what an agency may say*." *Id.* (emphasis added and internal quotation marks omitted). We would cede an essential part of this judicial function to the agency if we allowed an administrative preclusion principle to remove the jurisdictional fact of citizenship from our purview.

Second, our duty to decide the citizenship issue for ourselves is specifically bolstered by the congressional directive in § 1252(b)(5) that "places the determination of [citizenship] claims solely in the hands of the courts of appeals and (if there are questions of fact to resolve) the district courts." *Hughes*, 255 F.3d at 758; *see Alwan*, 388 F.3d at 510. This directive requires an independent judicial determination of citizenship,

which is incompatible with a forced adherence to an initial agency determination through administrative collateral estoppel.

Finally, general preclusion principles corroborate our conclusion that § 1252(b)(5) requires us to decide the citizenship issue without the constraint of administrative collateral estoppel. The congressional directive in § 1252(b)(5) for independent judicial determination must be given precedence over the operation of administrative preclusion: "An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that . . . [t]he tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question." Restatement (2d) of Judgments § 83(4).

\* \* \*

The foregoing analysis shows that Ms. Shepherd cannot establish the jurisdictional fact of citizenship. The undisputed and indisputable record requires a finding of alienage under § 1252(b)(5)(A). Such a finding precludes our jurisdiction to review Ms. Shepherd's petition under § 1252(a)(2)(C).

## IV. CONCLUSION

We conclude that we have jurisdiction to determine whether the facts support our authority to review Ms. Shepherd's petition, in particular whether she is an alien. In accordance with 8 U.S.C. § 1252(b)(5)(A), we find that she is an alien. It follows that the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(C) applies and precludes further review. The petition for review is therefore dismissed.