# United States Court of Appeals
## For the First Circuit

No. 16-2174

FRANK EDNEY MONTEIRO MIRANDA,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Circuit Judge,
Souter,[**] Associate Justice,
and Baldock,[***] Circuit Judge.

William P. Joyce, with whom Joyce & Associates P.C. was on brief, for petitioner.
Jesse M. Bless, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Anthony C. Payne, Assistant

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Jefferson B. Sessions, III, Attorney General of the United States, has been substituted for Loretta E. Lynch, former Attorney General.

[**]   Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

[***]  Hon. Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

Director, Office of Immigration Litigation, were on brief, for respondent.

April 5, 2017

**LYNCH**, <u>**Circuit Judge**</u>.  Frank Edney Monteiro Miranda, who was once deemed to be a U.S. citizen by an immigration judge ("IJ") in 2007 and escaped the possibility of removal, now petitions for that determination to be considered binding in 2016 removal proceedings before a second IJ, who ordered Miranda removed based on his conviction for a drug felony.  The Board of Immigration Appeals ("BIA") dismissed Miranda's appeal, and he petitions for review.  Miranda argues that the doctrine of res judicata should have barred the second IJ and the BIA from readjudicating the issue of his citizenship, finding that he is not a U.S. citizen, and ordering him removed.  He asks that we vacate his removal order.

This is a novel issue for this circuit.  We hold that the applicability of res judicata becomes immaterial before this court because of the jurisdictional limitations imposed by the Immigration and Nationality Act ("INA"), Pub. L. No. 89-236, 79 Stat. 911 (codified as amended in scattered sections of 8 U.S.C.).  Under the INA, this court must undertake a plenary review of the question of Miranda's citizenship in order to determine whether we have jurisdiction to hear his petition for review.  <u>See</u> 8 U.S.C. §§ 1252(a)(2)(C) (barring jurisdiction "to review any final order of removal against an alien who is removable" for the commission of certain criminal offenses), 1252(b)(5)(A) (requiring determination of petitioner's nationality claim when there is no dispute of fact).  We conclude that Miranda has failed to meet his

- 3 -

burden of proving that he is a U.S. citizen. Accordingly, the jurisdictional bar in § 1252(a)(2)(C) applies and precludes judicial review of the final order of removal against him. We dismiss his petition. In doing so, we agree with the Tenth Circuit's decision in Shepherd v. Holder, 678 F.3d 1171 (10th Cir. 2012).

## I.

The facts of this case are undisputed. Miranda was born out of wedlock in Angola on June 5, 1978 to a mother and father, both of Cape Verde citizenship. On August 31, 1978, Miranda's mother and father appeared as "informing parents" at the Embassy of Cape Verde in Angola and signed Miranda's "record of birth" before two witnesses. Miranda has two sisters, and both were also born in Angola.

On December 9, 1988, Miranda, his mother, and his two sisters were admitted to the United States as lawful permanent residents. Shortly thereafter, his father also relocated to the United States. On December 31, 1988, Miranda's mother and father were married in Massachusetts.

Miranda's mother became a naturalized U.S. citizen on January 6, 1995. At that time, Miranda was sixteen years old. Miranda and his two sisters filed N-600 applications for certificates of citizenship. Miranda's sisters attended their N-600 interviews and received their certificates of citizenship,

based on U.S. citizenship derived through their mother's naturalization. Miranda was unable to attend his N-600 interview, scheduled for May 30, 1996, because he was in the custody of the Massachusetts Department of Youth Services at the time. As a result, Miranda never received a certificate of citizenship.

On May 10, 2007, the Department of Homeland Security ("DHS") initiated removal proceedings against Miranda after he pled guilty to failing to register as a sex offender, in violation of Massachusetts law. Miranda moved to terminate the proceedings on the ground that he was a U.S. citizen because he had allegedly derived citizenship through his mother when she was naturalized in 1995. The IJ, Charles Adkins-Blanch, continued the proceedings in order to allow Miranda to pursue an N-600 application for a certificate of citizenship, but the United States Citizenship and Immigration Services ("USCIS") denied Miranda's application. The USCIS did so after examining, inter alia, Miranda's original birth record (which included his father's signature) and concluding that Miranda's paternity had been legitimated. Under applicable law in 1995, Miranda could have derived citizenship through his mother's naturalization only if his "paternity . . . ha[d] not been established by legitimation." 8 U.S.C. § 1432(a)(3) (1996).

Notwithstanding the USCIS's denial, IJ Adkins-Blanch convened a hearing to determine whether Miranda was a U.S. citizen. At the hearing, Miranda's mother testified that Miranda's father

was not involved in her children's lives and that she continued to be their sole economic provider even after she married their father in 1988. Miranda also submitted as evidence letters from public schools about his mother's responsibility for his education, a letter that his counsel had sent to his mother, and his sisters' certificates of citizenship. At the conclusion of the hearing, IJ Adkins-Blanch issued an oral decision granting Miranda's motion to terminate removal proceedings on the ground that he was a U.S. citizen. IJ Adkins-Blanch found that Miranda "ha[d] presented credible evidence that he derived citizenship through his mother as a child born out of wedlock whose paternity ha[d] not been established by legitimation." DHS never appealed this decision.

On February 12, 2012, Miranda was convicted for distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1). After Miranda's release from prison, DHS initiated new removal proceedings against him. The Notice to Appear dated September 15, 2015 charged Miranda as removable under 8 U.S.C. §§ 1227(a)(2)(A)(ii), (A)(iii), and (B)(i). See 8 U.S.C. §§ 1227(a)(2)(A)(ii) (removability for multiple criminal convictions), 1227(a)(2)(A)(iii) (removability for aggravated felony), 1227(a)(2)(B)(i) (removability for crime relating to controlled substance). Miranda once again filed a motion to terminate removal proceedings, citing IJ Adkins-Blanch's determination that he was a U.S. citizen and arguing that res

- 6 -

judicata barred the second IJ, Steven Day, from readjudicating Miranda's citizenship.

IJ Day denied Miranda's motion, refusing to apply res judicata in the context of an administrative proceeding where doing so would "frustrate[] Congressional intent." While IJ Day acknowledged that most circuits that have considered the applicability of res judicata in removal proceedings have held that the doctrine does apply, he also noted that the doctrine is more "flexible" in administrative proceedings than in judicial proceedings. "[V]arious courts have affirmed BIA decisions that decline to apply the doctrine when doing so would frustrate Congress's interest in removing aliens convicted of certain crimes," IJ Day observed. IJ Day then concluded that Miranda was not a U.S. citizen because he had been legitimated by his father under both Angolan and Massachusetts law and thus could not have derived citizenship through his mother's 1995 naturalization. Miranda was ordered removed from the United States to Cape Verde or, in the alternative, to Angola.

The BIA dismissed Miranda's appeal, agreeing with IJ Day's conclusion that res judicata was inapplicable and that Miranda's paternity had been established through legitimation under the laws of Angola and Massachusetts.

Miranda now petitions for review of the final order of removal against him. He advances two related arguments in his

petition. First, he argues that he is a citizen of the United States and thus not subject to removal. Second, he argues that IJ Day and the BIA erred by not applying res judicata to IJ Adkins-Blanch's 2007 determination that Miranda was a U.S. citizen.

II.

A. Statutory Jurisdictional Framework

We first determine whether we have jurisdiction to hear Miranda's petition. Section 1252(a)(2)(C) provides:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title . . . .

8 U.S.C. § 1252(a)(2)(C) (emphasis added).[1] Because Miranda was charged as removable under §§ 1227(a)(2)(A)(ii), (A)(iii), and (B)(i), this jurisdictional bar would ordinarily apply to preclude our review of his petition.

Here, however, Miranda argues that he is a U.S. citizen and thus not an "alien who is removable" under § 1252(a)(2)(C).[2]

---

[1] Section 1252(a)(2)(D) provides an exception to this jurisdictional bar by stating that nothing in § 1252(a)(2)(C) "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." Id. § 1252(a)(2)(D).

[2] Section 1101(a)(3) defines "alien" as "any person not a citizen or national of the United States." Id. § 1101(a)(3). Only aliens are removable. See id. § 1227(a).

Accordingly, in order to determine whether the jurisdictional bar applies, we must adjudicate Miranda's claim of citizenship. Indeed, the INA requires us to do so under § 1252(b)(5)(A), which provides: "If the petitioner claims to be a national of the United States and the court of appeals finds . . . that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim." Id. § 1252(b)(5)(A). Further, "[b]ecause nationality includes citizenship, the statutory reference to nationality claims [in § 1252(b)(5)(A)] is understood to include citizenship claims." Shepherd, 678 F.3d at 1179 n.6 (citations omitted).

As the material facts in this case are undisputed, we undertake a plenary review of Miranda's claim of U.S. citizenship in order to determine whether § 1252(a)(2)(C)'s jurisdictional bar applies.

B.  Miranda's Claim of U.S. Citizenship

"In deportation proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the [petitioner] to prove citizenship." In re Rodriguez-Tejedor, 23 I. & N. Dec. 153, 164 (BIA 2001); see also Leal Santos v. Mukasey, 516 F.3d 1, 4 (1st Cir. 2008). We conclude that Miranda has failed to meet this burden.

Miranda argues that he automatically derived citizenship through his mother's 1995 naturalization under the former 8 U.S.C.

§ 1432(a).  That section, entitled "Children born outside United States of alien parents; conditions for automatic citizenship," provided, in relevant part:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> . . . .
>
> (3) . . . [T]he naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is unmarried and under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the [mother] . . . .

8 U.S.C. § 1432(a)(3)-(5) (1996).  Because Miranda was unmarried, sixteen years old, and residing in the United States as a lawful permanent resident at the time of his mother's naturalization in 1995, his claim of U.S. citizenship turns on whether his paternity had been established by legitimation.

Although the INA does not expressly define "legitimation" as it is used in the former § 1432(a)(3), the BIA has defined the term "as 'the act of putting a child born out of wedlock in the same legal position as a child born in wedlock.'" Iracheta v. Holder, 730 F.3d 419, 425 (5th Cir. 2013) (quoting In re Cabrera, 21 I. & N. Dec. 589, 591 (BIA 1996)).  The agency recently held that a child's legitimation, under 8 U.S.C.

- 10 -

§ 1101(c)(1), can be established "if he or she was born in a country or State that has eliminated all legal distinctions between children based on the marital status of their parents or has a residence or domicile in such a country or State . . . , irrespective of whether the country or State has prescribed other legal means of legitimation." Matter of Cross, 26 I. & N. Dec. 485, 485-86 (BIA 2015). Nevertheless, as to establishing legitimation specifically for purposes of the former § 1432(a)(3), the BIA noted: "[W]here a jurisdiction requires an affirmative act to legitimate an out-of-wedlock child, paternity is not established without the requisite act, even if the jurisdiction has enacted a law to place children on equal footing without regard to the circumstances of their birth." Id. at 490.

The parties dispute which country's law should be used to determine whether Miranda's paternity was established by legitimation. Miranda argues that the laws of only Angola and Massachusetts are applicable, while the government argues that we may look to the law of Cape Verde in addition to those of Angola and Massachusetts. We need not linger on this issue because under the laws of all three jurisdictions, Miranda's paternity was established by legitimation. He thus could not have derived U.S. citizenship through his mother's naturalization under the former § 1432(a)(3).

First, Cape Verde legally abolished the distinction between legitimate and illegitimate children in 1976.  See Matter of Cardoso, 19 I. & N. Dec. 5, 7 (BIA 1983).  Article 2 of Cape Verde's Decree-Law No. 84/76 declared that "[i]n the eyes of the law, all children are considered equal, enjoy the same rights and are subject to the same duties and obligations vis-a-vis their parents regardless of the latter['s] civil status."  Decree-Law No. 84/76 of Sept. 25, 1976, Ch. I, Art. 2, reprinted in Cardoso, 19 I. & N. Dec. at 8 app. A.  Accordingly, "every child born [after this law's enactment in 1976] in Cape Verde -- whether in or out of wedlock -- is legitimated.  Moreover, every such child is legitimated regardless of whether the natural father takes formal steps to assert paternity."  Brandao v. Att. Gen. of U.S., 654 F.3d 427, 430 (3d Cir. 2011).

But even if Cape Verde law required a separate act of acknowledgement to establish paternity, the signature of Miranda's father on his birth record would be sufficient.  Under Article 5 of Decree-Law No. 84/76, paternity could be "established through an express declaration to such effect by the father."  Decree-Law No. 84/76 of Sept. 25, 1976, Ch. II, Art. 5, reprinted in Cardoso, 19 I. & N. Dec. at 8 app. A.  Miranda's father made such an express declaration when he -- together with Miranda's mother -- appeared as an "informing parent[]" at the Embassy of Cape Verde in Angola and signed Miranda's birth record before two witnesses.

- 12 -

Second, Angola also abolished all legal distinctions between legitimate and illegitimate children in 1977, the year before Miranda's birth.  See Maria do Carmo Medina, Affiliation in the New Angolan Family Code, 1994 Int'l Surv. Fam. L. 29, 30 (recognizing that "Law Nr. 10/77 of April 15[, 1977] removed all discrimination between legitimate and illegitimate children").

Even if Angolan law required a separate act to establish paternity, the signature of Miranda's father on his birth record sufficed.  As the government notes, citing a 2016 Library of Congress report prepared for the U.S. Department of Justice, "Angola's Civil Registry Code allowed for the acceptance [of] Miranda's birth registration from the registry in Cape Verde." While Miranda criticizes the "presumption" that his father's signature on his birth record was sufficient to establish paternal legitimation, he has failed to cite a single source for the proposition that a birth record bearing a father's signature would be insufficient.  He thus fails to meet his burden of showing that his paternity was not established by legitimation under the law of Angola.

Finally, even under Massachusetts law, Miranda's paternity was established by legitimation such that he was ineligible to derive citizenship through his mother's naturalization under the former § 1423(a)(3).  In 1986, Massachusetts passed General Law Chapter 209C, which -- in 1995,

the year that Miranda's mother was naturalized -- read: "Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children." Mass. Gen. Laws ch. 209C, § 1 (1995). In terms of acknowledgement of parentage, the relevant law in 1995 provided: "A voluntary acknowledgement of parentage taken outside of the commonwealth shall be valid for the purposes of this section if it was taken in accordance with the laws of the state or the country where it was executed." Id. § 11(d). For purposes of intestate succession, Massachusetts law as of 1995 recognized that a father's sworn affidavit "[wa]s sufficient to demonstrate the requisite unambiguous acknowledgement of a child." Cosgrove v. Hughes, 941 N.E.2d 706, 712 (Mass. App. Ct. 2011).

Under this legal regime, the fact that Miranda's father signed Miranda's birth record before two witnesses again suffices to establish paternity through legitimation. Miranda's argument that his parents would have had to intermarry before his father acknowledged him is unavailing. That is because, in 1980, the Massachusetts Supreme Judicial Court struck down as unconstitutional a statutory requirement of intermarriage as a condition for establishing legitimation. See Lowell v. Kowalski, 405 N.E.2d 135, 141 (Mass. 1980). Acknowledgement of paternity alone was sufficient for legitimation under Massachusetts law in 1995, and Miranda's father fulfilled that requirement.

- 14 -

In sum, Miranda has failed to meet his burden of showing that he is a U.S. citizen.  And as he has not made any argument that he is nonetheless a U.S. national, we must conclude that the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) applies, and we dismiss his petition for review.

C.  Applicability of Res Judicata in Removal Proceedings

Miranda also argues that IJ Day and the BIA should have applied res judicata to IJ Adkins-Blanch's 2007 decision, rather than relitigating the issue of his U.S. citizenship.  He makes this argument by pointing out that 8 U.S.C. § 1252(a)(2)(D) preserves our jurisdiction over "constitutional claims or questions of law raised upon a petition for review," notwithstanding § 1252(a)(2)(C)'s jurisdictional bar, and that the applicability of res judicata is a question of law.[3]

---

[3]    Miranda cites one case, Porn v. National Grange Mutual Insurance Co., 93 F.3d 31 (1st Cir. 1996), for the proposition that the applicability of res judicata is a question of law. Porn, however, dealt with res judicata in the context of a judicial proceeding, in which preclusion doctrines are more rigidly applied than they are in an administrative proceeding. See, e.g., Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 109-10 (1991). The BIA decision, from which this petition arises, focused on the applicability of res judicata specifically in the context of administrative removal proceedings.  By failing to address these nuances and elaborate on why we should recognize the applicability of res judicata in removal proceedings as a question of law for purposes of § 1252(a)(2)(D), Miranda may have waived his argument that the BIA should have applied res judicata. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 15 -

But we need not reach this argument in light of our plenary determination that Miranda has failed to meet his burden of proving U.S. citizenship.  Given our foregoing analysis, it would be counterintuitive to explore whether the BIA should have accorded preclusive effect to an earlier IJ decision that reached a conclusion flatly contrary to our own.  Indeed, Congress could not reasonably have intended § 1252(a)(2)(D) to allow us -- after having independently determined that Miranda is a removable alien -- to nonetheless consider a question of law that Miranda advances with the hope that we require the BIA to adopt a conflicting conclusion and grant Miranda, an alien with multiple felony convictions, immunity from removal.

## III.

We conclude that Miranda has failed to meet his burden of proving that he is a U.S. citizen.  As Miranda is neither a citizen nor a national, he is an alien.  The jurisdictional bar in 8 U.S.C. § 1252(a)(2)(C) thus applies and precludes our review of the final order of removal against Miranda.  The petition for review is <u>dismissed</u>.