LUCERO, Circuit Judge.
Abraham Gonzalez-Alarcon filed a habeas petition under 28 U.S.C. § 2241 alleging specific facts which, if proven, would demonstrate that he is a United States citizen. He seeks release from custody from Immigration and Customs Enforcement ("ICE") following ICE's reinstatement of a prior order of removal on that basis. Dismissing Gonzalez-Alarcon's petition, the district court concluded that he was required to exhaust administrative remedies, jurisdiction was barred by the REAL ID Act, and the petition for review process is an adequate substitute for habeas such that the REAL ID Act's jurisdiction-stripping provisions do not offend the Suspension Clause.
We conclude that the exhaustion provision at issue, 8 U.S.C. § 1252(d), does not govern facially valid citizenship claims. That subsection applies only to aliens. And because district courts have jurisdiction to determine their own jurisdiction, a court must first consider whether a petitioner is in fact an alien before requiring exhaustion. If a petitioner is a citizen, the provision does not apply.
We further hold that the REAL ID Act's jurisdiction-stripping provisions raise serious Suspension Clause concerns in one limited context. With respect to a United States citizen subject to a reinstated order of removal for whom the deadline to seek judicial review has passed, the REAL ID Act appears to bar federal court review. These restrictions would effectively strip citizenship from those who do not clear various procedural hurdles. Citizenship cannot be relinquished through mere neglect. Afroyim v. Rusk, 387 U.S. 253, 268, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). And "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Under the Suspension *1269 Clause, Gonzalez-Alarcon must be granted some path to advance his facially valid claim of citizenship in federal court.
Before permitting Gonzalez-Alarcon to proceed under the Great Writ, however, we conclude he should first attempt to obtain review of his citizenship claim through the REAL ID Act. In a similar case, the Ninth Circuit held that a habeas petitioner should file a motion to reopen his immigration proceedings-even though such a motion would be procedurally improper-and file a petition for review of any denial challenging the "jurisdictional issue" of citizenship. Iasu v. Smith, 511 F.3d 881, 893 (9th Cir. 2007). In Gonzalez-Alarcon's case, such a petition would be filed in the Fifth Circuit, where his original removal proceedings occurred. See § 1252(b)(2). We ordered supplemental briefing as to whether Gonzalez-Alarcon could obtain judicial review of his citizenship claim by following the procedure suggested in Iasu. The government represents to us that Gonzalez-Alarcon "could appeal the denial of such a motion to reopen to the Fifth Circuit in a petition for review." In light of this position, we conclude that the appropriate course of action is to stay our hand until Gonzalez-Alarcon has attempted to obtain judicial review within the confines of the REAL ID Act. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the district court's decision and remand with instructions to dismiss without prejudice.
I
Gonzalez-Alarcon was born in Mexico in 1993. He entered the United States in 2005 and was ordered removed in September 2012. After Gonzalez-Alarcon reentered the United States, his order of removal was reinstated in September 2013. He was removed, and on being found in the United States yet again, was taken into federal custody and charged with illegal reentry. On April 26, 2015, his order of removal was reinstated.
At some point, Gonzalez-Alarcon learned that he could claim rights based on United States citizenship. A child born abroad to an unwed, citizen mother is a citizen if the mother lived in the United States for at least one year prior to the child's birth. 8 U.S.C. § 1409(c).[1] An affidavit submitted by Gonzalez-Alarcon's mother, Dalia Alarcon, states that she was born in San Miguel, New Mexico, in 1973 at the hands of a local midwife. Her parents have always told her that she was born in the United States. However, she tells us that her parents did not get a United States birth certificate and left the United States shortly after her birth. Her parents divorced in 1979 or 1980 and her father returned to the United States. She lived with him in Albuquerque for approximately three years in the 1980s.
Gonzalez-Alarcon's great aunt, Beatriz Alarcon-Garcia, also submitted an affidavit. She states that her brother and his wife came to live with her in San Miguel, New Mexico in 1972. The couple lived in a garage near Alarcon-Garcia's house, and joined the rest of the family for meals. Gonzalez-Alarcon's grandmother was pregnant at the time with Gonzalez-Alarcon's mother, and had regular visits with the local midwife. When she went into labor, Gonzalez-Alarcon's grandmother went to the midwife's home and returned with Dalia-Gonzalez-Alarcon's mother. She also avers that Dalia later returned to New Mexico and attended school in Albuquerque for several years.
*1270 After counsel submitted these affidavits, the government dismissed the criminal charges against Gonzalez-Alarcon. He then moved for a stay of removal based on his alleged United States citizenship. On October 9, 2015, while in ICE custody, Gonzalez-Alarcon filed a § 2241 petition in the district court. He sought release from custody based on citizenship. A few days after the complaint was filed, Gonzalez-Alarcon was released from detention subject to certain conditions. He is barred from travelling outside the ICE Oklahoma City sub-office boundaries without prior approval, and must periodically report to immigration officers.
The government moved to dismiss the habeas petition based on mootness. However, the district court denied the motion, concluding that the restrictions on Gonzalez-Alarcon constituted custody for habeas purposes. But it held that the petition was subject to dismissal for failure to exhaust administrative remedies and for lack of jurisdiction. Gonzalez-Alarcon timely appealed.
II
The district court concluded that it lacked jurisdiction under the REAL ID Act and that the same statute required Gonzalez-Alarcon to exhaust administrative remedies. We consider that statute's scope and structure.
In general, removal orders are entered under 8 U.S.C. § 1229a, which provides for proceedings before an Immigration Judge. Orders issued under that section may be appealed to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.1(b). They are subject to motions to reconsider and motions to reopen. 8 U.S.C. § 1229a(c)(6), (7) ; 8 C.F.R. § 1003.2(b), (c). Motions to reconsider are subject to a twenty-day deadline, and motions to reopen are subject to a ninety-day deadline. 8 U.S.C. § 1229a(c)(6), (7). These deadlines are subject to equitable tolling. See Galvez Piñeda v. Gonzales, 427 F.3d 833, 838 (10th Cir. 2005). The BIA may also reopen or reconsider a decision sua sponte. 8 C.F.R. § 1003.2(a).
There are several other types of removal orders. Certain aliens are subject to expedited removal procedures. See 8 U.S.C. § 1225(b) (aliens determined inadmissible when arriving in the United States); § 1228(b) (aliens convicted of an aggravated felony). Gonzalez-Alarcon was ordered removed under § 1231(a)(5), which allows for reinstatement of prior removal orders. In such proceedings, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." Id. An order of removal may be reinstated by an immigration officer upon three findings: (1) "the alien has been subject to a prior order of removal"; (2) "the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal"; and (3) "the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a). One subject to reinstatement "has no right to a hearing before an immigration judge." Id.
Removal orders may be challenged only by way of a petition for review filed in the Court of Appeals:
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to *1271 review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).
8 U.S.C. § 1252(a)(5). The statute further states:
Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.
§ 1252(g).
A petition for review must be filed within thirty days of a final order of removal. § 1252(b)(1). That deadline is mandatory and jurisdictional; it is not subject to equitable tolling. Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). Further, "[a] court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." § 1252(d)(1).
Although § 1231(a)(5) states that reinstated orders of removal are not subject to being "reviewed," the statute also states that "[n]othing ... in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." § 1252(a)(2)(D). We have thus held that "Congress clearly provided for our review of 'constitutional claims or questions of law' related to reinstatement orders." Lorenzo v. Mukasey, 508 F.3d 1278, 1282 (10th Cir. 2007) (quoting § 1252(a)(2)(D) ). However, an individual petitioning for review of a reinstatement order cannot challenge the original order of removal, "including constitutional claims or questions of law," because such a challenge will be time barred. Cordova-Soto v. Holder, 659 F.3d 1029, 1032 (10th Cir. 2011).
At the time Gonzalez-Alarcon filed his habeas petition, the deadline for filing a petition for review of his reinstated removal order had expired. Because Gonzalez-Alarcon reentered the country after having been removed, his "prior order of removal is reinstated from its original date and is not subject to being reopened." § 1231(a)(5). Further, the BIA will not permit individuals to reopen removal proceedings after they have left the country. See 8 C.F.R. § 1003.2(d) ("A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States."). Our court has held that the post-departure bar is invalid because it is inconsistent with 8 U.S.C. § 1229a(c)(7), which states that "[a]n alien may file one motion to reopen proceedings under this section." Contreras-Bocanegra v. Holder, 678 F.3d 811, 813 (10th Cir. 2012) (en banc). But the Fifth Circuit has held that this rule extends only to motions to reopen or reconsider, not to sua sponte reopening or reconsideration. See Garcia-Carias v. Holder, 697 F.3d 257, 265 (5th Cir. 2012) (distinguishing Navarro-Miranda v. Ashcroft, 330 F.3d 672 (5th Cir. 2003) ). We note the Fifth Circuit's rule because Gonzalez-Alarcon's original removal proceedings occurred in the Fifth Circuit, and a petition for review must be "filed with the court of appeals for the judicial circuit in which the immigration *1272 judge completed the proceedings." 8 U.S.C. § 1252(b)(2).
III
We review de novo a district court dismissal for failure to exhaust. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). As noted above, § 1252(d) states that an order of removal is reviewable only if "the alien has exhausted all administrative remedies available to the alien as of right." Id. The district court concluded that Gonzalez-Alarcon had the right to file a Form N-600 application with U.S. Citizenship and Immigration Services ("USCIS"). This form allows an individual to apply for a "certificate of citizenship." See 8 C.F.R. § 341.1 ; Children Born Outside the United States; Applications for Certificate of Citizenship, 66 Fed. Reg. 32,138, 32,140 (June 13, 2001).
As several of our sibling circuits have recognized, this exhaustion requirement applies only to "aliens." § 1252(d)(1). The Ninth Circuit has thus explained that "a claim to citizenship need not be exhausted." Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005). If exhaustion of a citizenship claim were required, "it would be possible to unintentionally relinquish U.S. citizenship. ... The Constitution does not permit American citizenship to be so easily shed." Id. (quotations omitted). Accordingly, that court has held that "the statutory administrative exhaustion requirement of § 1252(d)(1) does not apply to a person with a non-frivolous claim to U.S. citizenship even if he has previously been (illegally) deported by the government." Id. (quotation and alteration omitted); see also Theagene v. Gonzales, 411 F.3d 1107, 1116 n.4 (9th Cir. 2005) ("[T]he plain language of the statute specifies that only an alien may be required to exhaust remedies. Moreover, a citizen cannot transform himself into an alien merely by failing to raise the question of his citizenship at the administrative level.").
The Eighth Circuit has held that "the exhaustion provisions of § 1252(d)(1) do not apply to 'any person' challenging a final order of removal, only to an 'alien.' " Moussa v. I.N.S., 302 F.3d 823, 825 (8th Cir. 2002). Accordingly, federal courts possess jurisdiction to "determine whether [a petitioner] is an alien in order to decide whether § 1252(d)(1) applies to him." Id. As the Fifth Circuit stated the proposition, courts "always have jurisdiction to determine [their] jurisdiction." Omolo v. Gonzales, 452 F.3d 404, 407 (5th Cir. 2006). And because "[o]nly an 'alien' may be required to exhaust his administrative remedies," a court "must determine whether [a petitioner] is an alien in order to determine whether § 1252(d)(1) bars ... jurisdiction." Id. The Second Circuit is in accord. See Poole v. Mukasey, 522 F.3d 259, 264 (2d Cir. 2008) ("The statutory administrative exhaustion requirement of § 1252(d)(1) does not apply to a person with a non-frivolous claim to U.S. citizenship." (quotations and alteration omitted) ).
Although our court has not previously addressed the precise issue, we have reached a similar conclusion on a related question. In Shepherd v. Holder, 678 F.3d 1171 (10th Cir. 2012), we noted that "[c]itizenship constitutes the denial of an essential jurisdictional fact in a deportation proceeding" because only aliens are removable. Id. at 1175 (quotation omitted). And in assessing jurisdiction under § 1252, we held that "we have jurisdiction to determine jurisdictional facts" including "the issue of Ms. Shepherd's citizenship." Id. at 1179. That case concerned an alien who was removable following a criminal offense; we explained that the statute "divests courts of jurisdiction only if an alien 'is removable by reason of having committed a criminal offense'
*1273 8 U.S.C. § 1252(a)(2)(C) (emphasis added). It does not say that courts lack jurisdiction if the alien is found deportable." Id. at 1180 (quotation and ellipses omitted). Accordingly, "Congress may limit federal court jurisdiction through provisions such as the § 1252(a)(2)(C) bar, but courts have authority to determine whether the factual conditions for the bar are present." Id. [2] Applying the same analysis, and joining the circuits noted above, we conclude that § 1252(d)(1) does not require that a claim of citizenship be exhausted.
It appears that the sole circuit court decision requiring exhaustion of a citizenship claim is Johnson v. Whitehead, 647 F.3d 120 (4th Cir. 2011). In that case, the court did not consider § 1252(d)(1). Instead, it held that a citizenship claim was barred for failure to exhaust under 8 U.S.C. § 1503 because the petitioner had failed to administratively appeal the denial of his Form N-600. Johnson, 647 F.3d at 125. Section 1503 permits the filing of a declaratory judgment action if an individual "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States." § 1503(a). The statute provides that such actions must be filed "within five years after the final administrative denial of such right or privilege." Id.
Section 1503 is not at issue in this case. That statute does not permit suits "if the issue of such person's status as a national of the United States ... arose by reason of, or in connection with any removal proceeding." § 1503(a). Gonzalez-Alarcon's claim of citizenship plainly arose in connection with his removal proceeding. See Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007) ( section 1503 suit cannot be maintained if "citizenship that forms the basis of [a claim] originates, at the least, in connection with the removal proceedings"); see also Iasu, 511 F.3d at 891 n.9 (concluding that § 1503(a) cannot supply a remedy to an individual in removal proceedings because " § 1252(b)(5) is the exclusive means of obtaining a declaration of nationality for a person in removal proceedings (and it must be sought in a petition for review of the final order of removal)"). Hence, even if Gonzalez-Alarcon were to file a Form N-600, he would not be able to pursue a § 1503 action.
Regardless, in no event would the filing of a Form N-600 provide Gonzalez-Alarcon the relief he seeks: release from ICE supervision. As we have previously recognized, "exhaustion is not required where it would be futile or fail to provide adequate relief." McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007) (quotation and alterations omitted). We accordingly join the majority of our sibling circuits in holding that if a petitioner advances a plausible claim to citizenship, the district court possesses jurisdiction to determine whether § 1252(d)(1) applies.
IV
The district court also concluded that jurisdiction over Gonzalez-Alarcon's petition was barred by the REAL ID Act. We review that issue of statutory interpretation de novo. Dalzell v. RP Steamboat Springs, LLC, 781 F.3d 1201, 1206 (10th Cir. 2015). As with the exhaustion requirement, Gonzalez-Alarcon argues that the jurisdictional bars contained in § 1252 apply only to aliens, and that the REAL ID
*1274 Act in general is permeated with references to aliens. Although he is correct that much of the statutory scheme applies only to aliens, we agree with the district court that the entirety of the statute cannot be read as being so limited.
As the district court noted, some portions of § 1252 specifically apply to individuals who claim to be United States nationals rather than aliens. Specifically, subsection (b)(5) sets forth the procedures to be followed if "the petitioner claims to be a national of the United States." § 1252(b)(5). The term "alien" is defined as "any person not a citizen or national of the United States." § 1101(a)(3). Accordingly, this subsection would be entirely superfluous if § 1252 applies only to aliens. But "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (quotation and alteration omitted).
Further, although one of the provisions at issue bars habeas review of claims filed "by or on behalf of any alien," § 1252(g), the other does not reference aliens. Under subsection (a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" notwithstanding " section 2241 of Title 28, or any other habeas corpus provision." § 1252(a)(5). The term "judicial review" includes "habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision." Id. Under the plain language of that subsection, a habeas challenge to an order of removal is barred regardless of whether the petitioner is an alien or claims citizenship.[3]
Gonzalez-Alarcon also argues that his habeas petition does not seek review of a removal order but merely attacks his detention. He cites the legislative history of the REAL ID Act, which states that the statute "will not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders." Joint Explanatory Statement of the Committee of Conference, H.R. Cong. Rep. No 109-72 at 175, 151 Cong. Rec. H2836, 2873 (May 3, 2005). Several courts have acknowledged that § 1252 does not bar habeas relief as to claims that are independent of a removal order. See Singh v. Gonzales, 499 F.3d 969, 972-73 (9th Cir. 2007) (courts have "distinguished between challenges to orders of removal and challenges that arise independently"); Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1366 (11th Cir. 2006) (a "petitioner who contests the very existence of an order of removal does not seek 'review of an order of removal' within the meaning of the REAL ID Act"); Kumarasamy v. Att'y Gen., 453 F.3d 169, 172 (3d Cir. 2006) (an alien challenging the legality of removal because he allegedly never received notice of his removal order is "not seeking review of an order of removal").
But courts have held that the jurisdiction-stripping provisions apply to indirect challenges to the merits of a removal order.
*1275 See Verde-Rodriguez v. Att'y Gen., 734 F.3d 198, 206 (3d Cir. 2013) (no jurisdiction to review habeas petition that "does not challenge the existence of his removal order, but alleges errors on which the validity of the final order are contingent" (quotation and alteration omitted) ); Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)." (quotation omitted) ); Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011) (if petitioner "is indirectly challenging her reinstated order of removal, ... we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge"). In an unpublished case, we held that a district court lacked jurisdiction over a similar habeas claim because "the challenge to [petitioner's] detention is grounded in the removal order rather than based on some inherent problem with the detention itself." Essuman v. Gonzales, 203 Fed.Appx. 204, 211-12 (10th Cir. 2006) (unpublished).
Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his order of removal. The only basis for ICE's continued supervision of Gonzalez-Alarcon is his pending removal order. See § 1231(a)(3) (providing that an individual "pending removal, shall be subject to supervision").[4] And Gonzalez-Alarcon seeks invalidation of that order on the basis of citizenship, which would result in his release. Accordingly, we conclude that he is seeking "judicial review of an order of removal" which is barred by § 1252(a)(5).
V
Having determined that the REAL ID Act bars habeas review of Gonzalez-Alarcon's claim, we consider whether Congress possesses the constitutional authority to prevent such review. We hold that although barring habeas review of citizenship claims raises a serious Suspension Clause question, Gonzalez-Alarcon has not carried his burden of demonstrating that the petition for review process is an inadequate substitute at the present time. See Miller v. Marr, 141 F.3d 976, 977 (10th Cir. 1998) (petitioner bears the burden of demonstrating inadequacy of habeas substitute). It is not clear to us that Gonzalez-Alarcon would be unable to present his citizenship claim in a petition for review following the denial of a motion to reopen-which he would be required to present to the Fifth Circuit. See § 1252(b)(2) (petition for review to be filed in circuit in which removal proceedings occurred).
In response to our request for supplemental briefing, Gonzalez-Alarcon contends that reopening is not available with respect to a reinstatement order. The government states that although an immigration judge would be prohibited "from granting a motion to reopen removal proceedings filed by Gonzalez-Alarcon, Gonzalez-Alarcon could appeal the denial of such a motion to reopen to the Fifth Circuit in a petition for review." Unless Gonzalez-Alarcon is denied review through *1276 this process, we decline to address his habeas petition.
A
"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Supreme Court has not yet decided whether the Suspension Clause protects the right to habeas review as it has developed through our nation's history, but has stated that "at the absolute minimum," it "protects the writ as it existed in 1789." I.N.S. v. St. Cyr, 533 U.S. 289, 301, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (quotation omitted). There is little doubt that Gonzalez-Alarcon's petition falls within the traditional ambit of habeas review. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." Id. Although the writ did not originally extend to individuals detained under state authority, see Felker v. Turpin, 518 U.S. 651, 663, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), Gonzalez-Alarcon is subject to supervision under federal law, see § 1231(a)(3). And the writ at common law consistently included "challenges to the jurisdiction of the custodian." St. Cyr, 533 U.S. at 302, 121 S.Ct. 2271 ; see also Yellowbear v.Wyo. Att'y Gen., 525 F.3d 921, 924 (10th Cir. 2008) ("Absence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause."). As Gonzalez-Alarcon notes, defendants lack authority to detain or remove United States citizens. See Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) ("Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact."); Shepherd, 678 F.3d at 1175 (whether an individual is an alien is a "jurisdictional fact" (quotation omitted) ).
"[J]udgments about the proper scope of the writ are normally for Congress to make." Felker, 518 U.S. at 664, 116 S.Ct. 2333 (quotation omitted). Yet Congress' authority is not unbounded. In St. Cyr, the Court held that "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.' " Id. (quoting Heikkila v. Barber, 345 U.S. 229, 235, 73 S.Ct. 603, 97 L.Ed. 972 (1953) ). Accordingly, "a serious Suspension Clause issue would be presented if" Congress has "withdrawn that power from federal judges and provided no adequate substitute for its exercise." Id. at 305, 121 S.Ct. 2271 ; see also Swain v. Pressley, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (the Suspension Clause does not prohibit the "substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention").
Although Gonzalez-Alarcon's detention fits within the framework of traditional habeas, there appears to be little dispute that a petition for review would provide an adequate substitute if available. Individuals detained by immigration authorities are "entitled to a judicial determination of their claims that they are citizens of the United States." Ng Fung Ho, 259 U.S. at 285, 42 S.Ct. 492. Specifically, "a resident of this country has a right to de novo judicial determination of a claim to United States citizenship" if the claim is "supported by evidence sufficient, if believed, to entitle him to a finding of citizenship." Agosto v. Immigration & Naturalization Serv., 436 U.S. 748, 753, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978) (quotation, alteration, and italics omitted).
Section 1252 provides for de novo review. A citizenship claim asserted in a petition for review may be decided by the *1277 appropriate court of appeals if there are no genuine issues of material fact. § 1252(b)(5)(A). If the facts are disputed, the proceeding is transferred to a district court "for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28." § 1252(b)(5)(B). Accordingly, several circuit courts have held that petitions for review generally provide an adequate and effective substitute for the writ of habeas corpus. See, e.g., Ruiz-Martinez v. Mukasey, 516 F.3d 102, 105 (2d Cir. 2008) ; Mohamed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007).
Other cases have considered the possibility of an as applied Suspension Clause challenge of the sort Gonzalez-Alarcon advances. See Luna v. Holder, 637 F.3d 85, 92 (2d Cir. 2011) ; Iasu, 511 F.3d at 891. He notes that the jurisdictional deadline to file a petition for review of his reinstatement order has passed. § 1252(b)(1) ; Stone, 514 U.S. at 405, 115 S.Ct. 1537. And he is subject to a reinstated order of removal, which "is not subject to being reopened." § 1231(a)(5). The REAL ID Act does not contain any explicit safety valve under which an individual could obtain review of a reinstated order of removal that was not presented in a timely petition for review.
In the context of a citizenship claim, the lack of a failsafe provision is troubling. Citizenship is unique; it is a person's "basic right for it is nothing less than the right to have rights." Perez v. Brownell, 356 U.S. 44, 64, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958) (Warren, C.J., dissenting). The Supreme Court has thus held that individuals possess "a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship." Afroyim, 387 U.S. at 268, 87 S.Ct. 1660 ; see also 8 U.S.C. § 1481(a) (providing that United States nationality may be lost by "voluntarily performing" certain acts "with the intention of relinquishing United States nationality").[5] Yet the "practical and concrete effect" of a removal order is "to deprive a United States citizen ... of his right to reside in this country." Anderson v. Holder, 673 F.3d 1089, 1095 (9th Cir. 2012) ; see also Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion) ("[T]he expatriate has lost the right to have rights."); Knauer v. United States, 328 U.S. 654, 659, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946) ("[D]enaturalization, like deportation, may result in the loss of all that makes life worth living." (quotation omitted) ). For individuals in Gonzalez-Alarcon's position, the REAL ID Act poses a weighty Suspension Clause question.
B
Despite this concern, we conclude that the Suspension Clause argument raised by Gonzalez-Alarcon should not be addressed *1278 until he first attempts to obtain review through the petition for review process. Congress has provided that "habeas corpus may be granted" by a federal court and that the court shall "dispose of the matter as law and justice require." §§ 2241, 2243. "Discretion is implicit in th[is] statutory command." Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ; see also Danforth v. Minnesota, 552 U.S. 264, 278, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (noting this language is "an authorization to adjust the scope of the writ in accordance with equitable and prudential considerations"). In Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004), the Court declined to consider whether the "actual innocence" exception previously extended to capital sentencing aggravators also applied to non-capital sentencing enhancements, directing the lower court to "first to consider alternative grounds for relief ... that might obviate any need to reach the actual innocence question." Id. at 388-89, 124 S.Ct. 1847. It held that courts should consider "claims for comparable relief" before addressing an allegation of actual innocence, and that the "availability of other remedies" is a "sufficient justification for a general rule of avoidance." Id. at 394, 395, 124 S.Ct. 1847.
We think the same rationale applies here. Congress clearly intended to funnel all challenges to removal through the petition for review process. See Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005). Yet, as noted above, it did not explicitly provide for judicial review of a citizenship claim raised after the petition for review deadline passes. § 1252(b)(1) ; Stone, 514 U.S. at 405, 115 S.Ct. 1537. Nevertheless, Gonzalez-Alarcon may be able to assert his citizenship claim through the petition for review process.
The Ninth Circuit provided the general outline for such a process in Iasu. There, the court rejected an as applied Suspension Clause claim based on citizenship, because the petitioner had a potential administrative path to judicial review under the REAL ID Act. Specifically, the court indicated that he could file an untimely motion to reopen. Iasu, 511 F.3d at 892. Although such a motion could be rejected as untimely, the court suggested that "alienage is also a jurisdictional prerequisite at the administrative level" and thus could be considered by the agency. Id. at 893. But "even if an IJ denies such a motion to reopen as procedurally improper, and even if the BIA upholds the denial, a court of appeals could still review the jurisdictional issue on direct appeal from that denial." Id. These administrative steps "provide[ ] the necessary process to alleviate Suspension Clause concerns." Id.
Similarly, in Luna, the court considered as applied Suspension Clause claims brought by two individuals who alleged they were prevented from filing timely petitions for review. 637 F.3d at 87. The court stated that such petitioners cannot be left without a "forum in which to raise plausible claims of constitutional violations" and thus "legitimate Suspension Clause concerns" were present. Id. But it concluded that the statutory motion to reopen process, if "subject to de novo review of legal issues and with equitable tolling and the removal of the departure bar" provided an adequate alternative to habeas. Id.
Gonzalez-Alarcon's case is complicated by two additional factors not present in Iasu and Luna. First, the petitioners in those cases had not been previously removed. The REAL ID Act provides:
If the Attorney General finds that an alien has reentered the United States illegally after having been removed or *1279 having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.
§ 1231(a)(5). Gonzalez-Alarcon also points out other potential regulatory obstacles to relief. See 8 C.F.R. § 1003.23(b)(1) (setting a ninety-day deadline for motions to reopen and prohibiting such motions from individuals who previously departed the United States). As with the time limit on motions to reopen considered in Iasu and Luna , see § 1229a(c)(7)(C), the agency may necessarily deny reopening as procedurally improper. Alternatively, the statute's references to "aliens" could be read so that this subsection does not apply to citizenship claims on the same basis discussed in Part III, supra. In either event, Gonzalez-Alarcon might be able to file a petition for review and seek judicial consideration of his citizenship claim. In Mata v. Lynch, --- U.S. ----, 135 S.Ct. 2150, 192 L.Ed.2d 225 (2015), the Court held that courts of appeals possess jurisdiction to review the denial of a motion to reopen regardless of "[w]hether the BIA rejects the alien's motion to reopen because it comes too late or because it falls short in some other respect." Id. at 2154-55.
This brings us to the second complication. We say that Gonzalez-Alarcon might be able to obtain review because the question cannot be directed to our court. His petition for review would have to be filed in the Fifth Circuit. § 1252(b)(2). And, of course, we have no authority to issue an interpretation of the REAL ID Act binding on that court. But the government has indicated in its supplemental brief that the Fifth Circuit could adjudicate Gonzalez-Alarcon's citizenship claim. It notes that the Fifth Circuit has held that it has "jurisdiction to review [a petitioner's] nationality claim in the context of a reinstatement order." Iracheta v. Holder, 730 F.3d 419, 422 (5th Cir. 2013). Such review is proper because whether a petitioner "is actually an alien is a jurisdictional fact in a removal or reinstatement proceeding." Id. Accordingly, Gonzalez-Alarcon may be able to challenge this jurisdictional fact in federal court regardless of whether his motion to reopen was procedurally proper. We are thus unable to say at this juncture that Gonzalez-Alarcon has shown the REAL ID Act provides an inadequate substitute for habeas.
VI
Given this reasoning, Gonzalez-Alarcon's habeas petition should be dismissed without prejudice to refiling in the event that his attempts to obtain judicial review of his citizenship claim under the REAL ID Act prove futile. The district court did not specify whether its dismissal was with or without prejudice. Ordinarily, such a dismissal operates as a dismissal with prejudice. See Fitzgerald v. Corr. Corp. ofAm., 403 F.3d 1134, 1139 (10th Cir. 2005). We conclude that the dismissal should be without prejudice, and thus VACATE the district court's dismissal of Gonzalez-Alarcon's habeas petition and REMAND with instructions to dismiss without prejudice.

The Supreme Court recently struck down this statute's differential treatment of mothers and fathers, but its decision applies only prospectively. See Sessions v. Morales-Santana, --- U.S. ----, 137 S.Ct. 1678, 1701, 198 L.Ed.2d 150 (2017).

We discussed exhaustion in Shepherd, but did not consider whether § 1252(a)(1) applies to citizens, because we concluded the petitioner was not a citizen. Shepherd, 678 F.3d at 1176-78, 1185.

Although Gonzalez-Alarcon does not raise the issue of constitutional avoidance, this conclusion holds even under that canon. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1245 (10th Cir. 2008) (quotation omitted). Because the plain language of the statute is unambiguous, we cannot read it as permitting citizenship claims regardless of the constitutional issue addressed infra.

We agree with the district court that Gonzalez-Alarcon remains in custody for habeas purposes. See Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) ("[A]n alien whose liberty is restricted pursuant to an order emanating from the INS is 'in custody' for purposes of satisfying the prerequisites of habeas review."). His liberty is significantly restricted by an ICE order preventing him from travelling outside the ICE Oklahoma City sub-office boundaries without prior approval, and requiring him to report to immigration officers.

The Court has recognized a distinction between those who are citizens under the Fourteenth Amendment and individuals whose claim to citizenship rests on statute because they were not "born or naturalized in the United States." Rogers v. Bellei, 401 U.S. 815, 835, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971). With respect to the latter category, which includes Gonzalez-Alarcon, Congress may impose conditions precedent and subsequent to citizenship, such as residency requirements. Id. at 834, 91 S.Ct. 1060. But it strains credulity to suggest that Congress intended to impose, as a condition subsequent to citizenship, that an individual successfully resist removal after being incorrectly detained by an executive agency lacking jurisdiction over citizens. Under 8 U.S.C. § 1409(c), an individual born outside the United States out of wedlock acquires citizenship if his mother was a citizen and had previously lived in this country for one year. We are not directed to any act of Congress that would result in the elimination of Gonzalez-Alarcon's citizenship if his allegations prove true.