PHILLIPS, J., dissenting.
In September 2002, Lina Thoung entered the United States on a visitor visa belonging to another Cambodian woman, Sokheang Leng. The next year, Thoung succeeded in adjusting her immigration status to lawful permanent resident, which allowed her to stay in the United States indefinitely. Then, in March 2007, she applied for citizenship. In the form she submitted to the Department of Homeland Security, she affirmed that she had never *1006 provided false information to the government in any application for a government benefit. And six months later, in September, she became a naturalized U.S. citizen. That day, she also submitted a name-change request so that her certificate of naturalization would be issued in a new name: Lina Sokheang Lanham.
In 2012, Thoung obtained a passport, but her new identity began to unravel. The State Department opened a passport investigation, and agents discovered her years-long immigration fraud. In July 2012, when the agents detained Thoung, she was carrying a Kansas driver's license and a Social Security card, both built on her fraudulent visa identity. The Kansas U.S. Attorney charged her with eight counts related to her fraudulently obtaining government documents. By December 2012, the parties had reached a plea agreement. Thoung pleaded guilty to one count of document fraud, for violating 18 U.S.C. § 1546(a), and the government dismissed the remaining counts. In the plea agreement, Thoung admitted (1) that she had used a fraudulent visa to enter the country; (2) that while here, she had parlayed the fraudulent visa (and the false information it contained) into a naturalization certificate and other government-issued documents; and (3) that she had knowingly committed these frauds. She also stipulated that the government could revoke her U.S. citizenship under 8 U.S.C. § 1451(e), and she agreed "to enter into a Joint Stipulation for Judicial Removal" under 8 U.S.C. § 1228(c)(5).
On January 23, 2017, the district court issued the requested judicial removal order, under 8 U.S.C. § 1228(c)(5). Appellant's App. at 47. The court ordered Thoung removed to Cambodia. Immigration and Customs Enforcement immediately took Thoung into custody. After six months passed without Thoung's being deported to Cambodia, immigration authorities released her subject to an Order of Supervision. Under this order, Thoung has remained in the United States, subject to arrest and deportation.[1]
In February 2017, now represented by an immigration attorney, Thoung petitioned for a writ of habeas corpus before the same district court that had handled her criminal proceedings. This time, she argued that the sentencing court had lacked jurisdiction to enter the order of removal under § 1228(c)(5) because she was not removable under § 1227(a)(2)(A).[2] The district court denied Thoung's habeas petition, rejecting Thoung's argument that it had lacked jurisdiction to enter the 2013 removal order. Thoung v.United States , Case No. 17-3032-EFM, 2017 WL 4536421 (D. Kan. Oct. 11, 2017). Thoung appealed.
Before oral argument, we asked for supplemental briefing on whether the district court had jurisdiction to consider Thoung's petition, directing the parties' attention to 8 U.S.C. § 1252(a)(5).[3] Relying on that statute, the majority now concludes that the district court lacked subject-matter jurisdiction to consider Thoung's habeas petition. Maj. op. at 1002-03. In doing so, it relies on these words from § 1252(a)(5) : "[A] petition for review filed with an appropriate *1007 court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal ...." Maj. op. at 1001 (quoting 8 U.S.C. § 1252(a)(5) ). In turn, the majority notes that § 1252(b)(1) requires that such a petition be filed not later than 30 days after the date of the final order of removal. See id. at 1002. Because Thoung never filed a petition for review, the majority holds that she has waived her right to appellate review. Id.
In my view, the majority's statutory interpretation is incomplete. More fully read, § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter ...." (emphasis added). With the italicized language restored, § 1252(a)(5) takes on a different meaning. Now it requires more than a district-court document entitled "Order of Removal." Instead, it requires a hard look at the statutory legitimacy of an Order of Removal. And that takes me to a question the majority's opinion doesn't reach: Did § 1228(c)(5) authorize the district court to enter Thoung's Order of Removal?
To answer that question, it helps to step back to Thoung's document-fraud prosecution. Though Thoung could stipulate to an order of removal, she could not stipulate to expand the district court's subject-matter jurisdiction. Section 1228(c)(5) 's limits confined the parties and the district court.
This takes us to the language of § 1228(c)(5) -the statutory section the district court relied on to do just that. This subsection reads as follows:
(5) Stipulated judicial order of removal
The United States Attorney, with the concurrence of the Commissioner [of Immigration and Naturalization], may, pursuant to Federal Rule of Criminal Procedure 11, enter into a plea agreement which calls for the alien, who is deportable under this chapter, to waive the right to notice and a hearing under this section, and stipulate to the entry of a judicial order of removal from the United States as a condition of the plea agreement or as a condition of probation or supervised release, or both. The United States district court, in both felony and misdemeanor cases, and a United States magistrate judge in misdemeanor cases, may accept such a stipulation and shall have jurisdiction to enter a judicial order of removal pursuant to the terms of such stipulation.
§ 1228(c)(5).
To understand this subsection, I think a good starting place is to ask what jurisdictional requirements it puts on judicial removal orders. For me, it helps to isolate what's required. First, the government and Thoung must enter a plea agreement under Fed. R. Crim. P. 11 (satisfied). Second, Thoung must be deportable under this chapter [Chapter 12, Immigration and Nationality] (satisfied). Third, the plea agreement must call for Thoung to "waive the right to notice and a hearing under this section" [ § 1228"Expedited removal of aliens convicted of committing aggravated felonies"] (un satisfied). Thoung's plea agreement says nothing about her waiving notice and hearing rights under § 1228. And for good reason. Only noncitizens convicted of crimes more serious than Thoung's (those falling under § 1227(a)(2)(A) ) even can stipulate to judicial removal. This is evident when we apply "under this section," just as § 1228(c)(5) tells us to do.
Who can waive rights to notice and hearing "under this section [ § 1228 ]"? Let's run through the whole section, starting *1008 with § 1228(a). That subsection ties "the availability of special removal proceedings" at certain correctional facilities to "aliens convicted of any criminal offense covered in section 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1227(a)(2)(A)(i) of this title." Next, let's turn to § 1228(b). That subsection speaks to "the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony)." Finally, and most importantly since the operative § 1228(c)(5) is nestled within it, let's turn to § 1228(c). Here, we see that 1228(c)(1)-(3) speaks to defendant noncitizens with criminal convictions covered by § 1227(a)(2)(A).
Now let's remember how the district court correctly classified Thoung's conviction-under § 1227(a)(1)(A) and § 1227(a)(3)(B). From this, I believe that Thoung never had a right to notice or hearing "under this section [ § 1228 ]," so she obviously never could have waived it. Had Thoung tried to waive section 1228 rights to notice and hearing, the waiver would be meaningless. Simply put, Congress has not authorized stipulated judicial removal orders for noncitizens convicted of her crime.
The parenthetical "deportable under this chapter" does not change this. That language merely sets a threshold condition, but it does not authorize stipulated removal orders against all deportable persons. After all, not all deportable persons are even convicted criminals,[4] yet § 1228(c)(5) authorizes removal orders only when stipulated between the parties in plea agreements of noncitizens convicted of § 1227(a)(2)(A) crimes.
The government contends that Thoung is attempting to "graft[ ] the requirements of § 1228(c)(2)(B) onto § 1228(c)(5)." Appellee's Br. at 14. But the government's position has wavered. The Department of Justice's Criminal Resource Manual[5] states that "stipulated judicial deportation should be sought only if the offense to which the alien defendant will plead guilty causes him to be deportable under 8 U.S.C. § 1251(a)(2)(A)."[6] Thoung's App. at 63. I agree that resource manuals are not law and that § 1228(c)(5) was enacted after this manual was written. But the same basic scheme was in place when the government interpreted as it did in its manual. The government has not chosen to revise the manual since the enactment of § 1228(c)(5).[7]
*1009 Even an ambiguity in § 1228(c)(5) on these points likely would not change the result. After all, we resolve statutory ambiguities in the noncitizen's favor "because deportation is a drastic measure and at times the equivalent of banishment o[r] exile." Fong Haw Tan v. Phelan , 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948) ; see also United States v. Phommachanh , 91 F.3d 1383, 1385 (10th Cir. 1996) ("In construing § 3583(d), a deportation statute, we are mindful of 'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.' ") (quoting INS v. Cardoza-Fonseca , 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ).
Even if the government could surmount these problems, another serious problem would await it-the canon of constitutional avoidance. See INS v. St. Cyr , 533 U.S. 289, 299-300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (stating that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' ... we are obligated to construe the statute to avoid such problems."). By interpreting § 1252(a)(5) as it does, the majority risks a Suspension Clause violation. Barring Thoung from pursuing habeas relief, the majority leaves her with a bare right to file a petition for review within thirty days of the issuance of her removal order. Maj. op. at 1009.
But if the district court did exceed its jurisdiction under § 1228(c)(5) by entering the removal order, then that would cast serious doubt on whether the order is a "final order of removal" under § 1252(a). If the removal order were ultra vires, we would have lacked jurisdiction to consider a timely petition for review from Thoung.[8] Cf. Mejia Galindo v. Sessions , 897 F.3d 894, 898-99 (7th Cir. 2018) (reasoning that because the Board of Immigration Appeals lacked authority to enter a final removal order, the order was ultra vires and the court had no jurisdiction to address the petition's merits); Rhodes-Bradford v. Keisler , 507 F.3d 77, 81-82 (2d Cir. 2007) (same).
If that is so, the right to petition for review could not adequately substitute for a habeas application. Hence my Suspension Clause concerns. See U.S. Const. art I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); Anderson v. Holder , 673 F.3d 1089, 1095 (9th Cir. 2012) ("Because the REAL ID Act of 2005 eliminated habeas review of removal orders, leaving petitions for review as the exclusive means to challenge such orders, the absence of any § 1252 jurisdiction over ultra vires removal orders threatens to create a serious constitutional problem."). At the very least, it is not "clear that the question of law could [have been] answered in another judicial forum," which "strongly counsels against adopting a construction that would raise serious constitutional questions." See St. Cyr , 533 U.S. at 314, 121 S.Ct. 2271.
Here, a caveat. Thoung challenges the district court's jurisdiction to issue the stipulated removal order. What she does not do is admit jurisdiction but then contest how the district court exercised its jurisdiction. See Latu v. Ashcroft , 375 F.3d 1012, 1020 (10th Cir. 2004) ("An official act *1010 does not become ultra vires if the officer was statutorily empowered to act but may have acted erroneously."). She contends that the removal order was void from its inception. See Kumarasamy v. Attorney Gen. of U.S. , 453 F.3d 169, 172 (3d Cir. 2006) (upholding the district court's jurisdiction to review a habeas petition, because instead of arguing that the removal order didn't "lawfully authorize his removal," the petitioner argued that no valid removal order existed at all-that he was not "seeking review of a removal order").
In contrast, the petitioner in Gonzalez-Alarcon v. Macias challenged the district court's underlying decision that he was not a U.S. citizen. There, we held that § 1252(a)(5) barred a detainee in ICE custody from seeking to invalidate his pending removal order based on his citizenship.[9] 884 F.3d 1266, 1275 (10th Cir. 2018). Unlike the district court in Thoung's case, the immigration judge in Gonzalez-Alarcon had statutory authority to rule on the petitioner's citizenship claim, and even to rule incorrectly. See Latu , 375 F.3d at 1020. The same logic applies when a noncitizen challenges an immigration judge's legal conclusion that his criminal conviction qualifies as a statutory basis for removability, a conclusion that the immigration judge is authorized to make. See , e.g. , Hamilton v. Holder , 584 F.3d 1284, 1288 (10th Cir. 2009) (holding that immigration judges are authorized to examine PSRs to determine whether a crime qualifies as an "aggravated felony") (citing Nijhawan v. Holder , 557 U.S. 29, 32, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) ). Although district courts can find facts and reach legal conclusions, they cannot assume jurisdiction over removal proceedings absent clear statutory authority.
For these reasons, I would reverse the district court, remand with instructions that the district court vacate the removal order, and require that Thoung's immigration issues be decided in the proper forum. I respectfully dissent.

Thoung has since married a U.S. citizen. Absent the removal order, she would be eligible to adjust her immigration status on that basis.

In its Order of Removal filed on May 13, 2013, the district court ordered Thoung removed from this country for her § 1546(a) conviction, which, the district court ruled, fit under § 1227(a)(1)(A) and § 1227(a)(3)(B).

Congress restricted the scope of judicial review in immigration proceedings in the REAL ID Act. Pub. L. No. 109-13, Div. B, 119 Stat. 231, 302-23; 8 U.S.C. § 1252.

Many noncitizens become deportable without a criminal conviction-for instance, the noncitizen who overstays his work visa. See § 1227(a)(1)(C)(i).

U.S. Dep't of Justice, U.S. Attorneys' Manual, tit. 9, Criminal Resource Manual § 1929, available at https://www.justice.gov/jm/criminal-resource-manual-1929stipulated-judicial-deportation.

8 U.S.C. § 1251(a)(2)(A) has since been moved, with some minor changes, to § 1227(a)(2)(A). Compare 8 U.S.C. § 1252(a)(2)(A) (1994) (listing "general crimes"), with 8 U.S.C. § 1227(a)(2)(A) (listing "general crimes").

The government notes that this section is currently labeled "Outdated-pending revision." Government's Resp. Br. at 17. It appears that the government added this label at some point between March and May of 2017, well after Thoung filed her habeas petition. Compare https://web.archive.org/web/20170328183729/https://www.justice.gov/usam/criminal-resource-manual-1929-stipulated-judicial-deportation with https://web.archive.org/web/20170501014453/https://www.justice.gov/usam/criminalresource-manual-1929-stipulated-judicial-deportation.

Nor could § 1252(a)(2)(D) have acted as a safety valve for Thoung's claim. That provision states that nothing in § 1252"which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition of review filed with an appropriate court of appeals in accordance with this section. " Id. (emphasis added). But to be "in accordance with this section," a petition for review must challenge a "final order of removal." 8 U.S.C. § 1252(a)(1), and an ultra vires order is "not a final order of removal." Mejia Galindo , 897 F.3d at 898.

Our decision in Gonzalez-Alarcon runs counter to the Ninth Circuit's decision in Anderson , which recognized that "the plain language of § 1252(b)(5) not only permits but requires [circuit courts] to evaluate a claim to United States nationality upon a petition for review, even where our jurisdiction would otherwise be limited." 673 F.3d at 1096. But Gonzalez-Alarcon acknowledged that the petitioner could file a motion asking the immigration judge to reopen the removal proceedings, alleviating any Suspension Clause concerns, at least "at the present time." See 884 F.3d at 1275. And as one panelist noted, the petitioner had "an alternative means for relief"-he could have, at any time, "file[d] a Form N-600," which, if granted, would have made him "categorically ineligible for removal." Id. at 1281-82 (Tymkovich, C.J., concurring).